UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THATIUS M.,

      Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

      Defendant.

CASE NO. C19-5511-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

  Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for further proceedings.

## **FACTS AND PROCEDURAL HISTORY**

  Plaintiff was born on XXXX, 1956[1] in Micronesia, later moving to the continental United States. English is not his first language. (AR 42.) He previously worked as a cannery worker and cannery supervisor. (AR 23.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff filed applications for DIB and SSI in 2016, alleging disability beginning with a stroke on November 27, 2015. (AR 81, 88.) The applications were denied at the initial level and on reconsideration. (AR 79, 80, 95, 96.)

On December 1, 2017, ALJ Malcolm Ross held a hearing, taking testimony from plaintiff, his son, and a vocational expert (VE). (AR 31-78.) On May 23, 2018, the ALJ issued a decision finding plaintiff not disabled from the onset date through the date of the decision. (AR 15-25.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 23, 2019 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff had the severe impairments of status post cerebral vascular accident, diabetes mellitus, alcohol use disorder, and eye abnormalities status post cataract surgery. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has

demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform medium work, further limited to frequently balancing, stooping, kneeling, crouching, and crawling; occasionally climbing ramps and stairs; and never climbing ladders, ropes, or scaffolds. He can frequently use peripheral acuity and depth perception. He can tolerate occasional exposure to extreme noise (above level three) and occasional exposure to excessive vibrations and hazards. With that assessment, the ALJ found plaintiff able to perform his past relevant work as a cannery worker or cannery supervisor, as generally performed (AR 23).

The ALJ also made alternative findings at step five. If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found plaintiff capable of performing other jobs, such as work as a laundry worker, janitor, or fish cleaner (AR 24).

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation of the evidence, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred by rejecting his testimony and three medical opinions and erred in evaluating his RFC. He requests remand for an award of benefits or, in the alternative, for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoted source omitted). Where contradicted, the opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoted source omitted). An ALJ may properly reject an opinion that is conclusory and inconsistent with the record. *See generally Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999); *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986).

A. <u>Oliver C. Kuhn-Wilken, D.O.</u>

Plaintiff's eye doctor, Oliver Kuhn-Wilken, reported that plaintiff has "homonymous hemianopsia of the right visual field," which severely limits plaintiff's peripheral vision in the right half of his visual field. (AR 504, 521.) The condition limits plaintiff's "BCVA" (Best

Corrected Visual Acuity) and reading speed and cannot be corrected with surgery. (*Id.*) Plaintiff is "not safe to drive." (AR 498.)

The ALJ did not address Dr. Kuhn-Wilken's statements. The Commissioner contends any error is harmless because plaintiff has not shown his past work required driving or reading fast. The Court finds otherwise.

The Commissioner concedes that the vocational testimony about the impact of a peripheral acuity limitation on plaintiff's past work was "confusing." (Dkt. 16 at 3.) Nevertheless, the VE testified clearly that plaintiff's jobs required "frequent" use of peripheral vision and depth perception. (AR 63-64.)[2] The VE also testified that the step five jobs found appropriate by the ALJ – janitor, laundry worker, and fish cleaner – all require frequent or "very frequent" depth perception and peripheral acuity. (AR 66-67.) It cannot be said the failure to address plaintiff's visual acuity limitations is harmless. On remand, the ALJ should consider Dr. Kuhn-Wilken's opinion about plaintiff's visual limitations and reconsider the step four and five findings.

B.  Don Prater, P.A.C.

Plaintiff's treating provider, Mr. Prater, opined plaintiff could not work at either a sedentary or active level "due to loss of balance, loss of hearing, loss of sight, decreased strength, and hearing." (AR 438.) The ALJ gave the opinion less weight because Mr. Prater was not an acceptable medical source. (AR 22.) Plaintiff argues the report should be given the weight of a treating physician because Dr. Werner reviewed and adopted the opinion. However, the mere fact an opinion by an "other source" was co-signed by an acceptable medical source cannot transform

---

[2] The VE contradicted himself later in his testimony, seeming to state only occasional depth perception was required. (AR 72.) While adding to the confusion, this statement would also be inconsistent with the Dictionary of Occupational Titles (DOT). *See* DOT 529.686-014, 1991 WL 674719 (G.P.O. 1991) ("Depth Perception: Frequently").

ORDER
PAGE - 5

it into a treating source opinion, absent evidence – which is wholly lacking here – that the other source was acting as an agent of the physician. *Hutchens v. Astrue*, No. 10-35513, 433 F. App'x 510, 512 (9th Cir. May 10, 2011); *Bain v. Astrue*, No. 07-35635, 319 F. App'x. 543, 546 (9th Cir. Mar. 12, 2009). Nevertheless, even as an opinion from an "other source," Mr. Prater's opinion may only be discounted for specific and germane reasons. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

The Commissioner argues even if the ALJ erred by failing to consider Dr. Werner's review and adoption of Mr. Prater's opinion, the error is harmless because the reasons the ALJ gave to reject Mr. Prater's opinion are sufficiently specific and legitimate to serve as reasons to discount the opinion of a physician, Dr. Werner, as well. (Dkt. 16 at 7.) The Court disagrees.

The ALJ gave Mr. Prater's opinion "very little weight" because it was inconsistent with Mr. Prater's own findings and the longitudinal treatment record. (AR 22, citing AR 444 and 483-83.) The ALJ characterized Mr. Prater's findings as demonstrating "all normal findings on physical examination", and "entirely within normal limits". (*Id.*) The referenced records, however, do not address balance, hearing, vision, or strength, and therefore fall short of contradicting Mr. Prater's opinion on those issues. On remand, the ALJ should reconsider Mr. Prater's opinion and provide legally sufficient reasons in support of the weight assigned to the opinion.

C.      Vinay Malhotra, M.D.

Plaintiff's treating cardiologist, Vinay Malhotra, opined that plaintiff "[b]y history is functional class 2." (AR 342.) The parties agree that this refers to Class II on the New York Heart Association Classification scale and indicates a patient has slight limitations on physical activity. (Dkt. 13 at 13; Dkt. 16 at 8.) The ALJ did not discuss this opinion. The Commissioner argues Dr. Malhotra's statement is not a medical opinion and, alternatively, any error is harmless because

slight limitations are not inconsistent with medium work. However, Dr. Malhotra referred to the need for "aggressive secondary prevention." (AR 342.) It is well established the ALJ must consider the limiting effects of all of plaintiff's impairments, including those that are not severe, in determining RFC. 20 C.F.R. §§ 404.1545(e), 416.945(e); Social Security Ruling (SSR) 96-8p. On remand, the ALJ should inquire of Dr. Malhotra whether "aggressive preventative measures" include any environmental limitations on plaintiff's work activities.

## Plaintiff's Symptom Testimony

Absent affirmative evidence of malingering, an ALJ must provide specific, clear, and convincing reasons to reject a claimant's subjective symptom testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). In considering the intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p. [3]

The ALJ summarized plaintiff's testimony as follows:

> The claimant alleged that he could not sustain work activities on a regular and continuing basis due to cerebrovascular accident, loss of strength and mobility, loss of balance, blindness, hearing loss, diabetes, and hypertension. On a Function Report he provided with this application and appeal, the claimant noted his impairments affect his ability to perform basic activities such as lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing, seeing, memory, completing tasks, concentration, understanding,

---

[3] Effective March 28, 2016, the Social Security Administration (SSA) eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 7

> following instructions, and using his hands. He explained that since his stroke, his thinking is delayed, he is forgetful and has to ask the time and date constantly, he gets dizzy when standing or walking, his eyesight is cloudy, and he has weakness from inactivity. He stated that he could walk a few blocks before he would have to stop and rest for about 15 minutes, and he has difficulty following instructions. The claimant testified at the hearing, but was unable to provide much information about his specific symptoms and limitations, due to reported poor memory since his stroke. He did note that he has had to use a cane for balance, though it has not been prescribed by a doctor, and he has to hold onto something while walking.

(AR 20 (citations omitted).) The ALJ discounted plaintiff's testimony because it was unsupported by medical evidence and because plaintiff made inconsistent statements about his education, ability to drive, and alcohol use. (AR 20-21.) Symptom "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence[.]" *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Therefore, to determine the sufficiency of the ALJ's consideration of plaintiff's testimony, it is necessary to review the substantial evidence support for the ALJ's reliance on the inconsistency of plaintiff's statements about his activities.

The Court finds problematic the ALJ's evaluation of plaintiff's subjective testimony. The ALJ relied on a psychological evaluation by Brett Valette, Ph.D, wherein Dr. Valette stated that plaintiff's "organization and character of speech was difficult to understand" and he "has a strong accent." (AR 541.) Dr. Valette documented the following exchange regarding alcohol use: "'I quit smoking and drinking alcohol after my stroke.' You told me you never drank alcohol. 'A lot.' … Why did you tell me you did not drink alcohol? 'I quit.'" (AR 541.) Dr. Valette documented the following exchange regarding driving: "'I have not driven since my stroke.' You told me you drove here? 'Well…I do drive…But I don't drive a lot.'" (AR 540.) Despite Dr. Valette's acknowledged difficulty understanding plaintiff, the ALJ relied on the confusing exchanges between Dr. Valette and plaintiff to conclude plaintiff made "inconsistent statements that tend to undermine the reliability of his allegations." (AR 21.) Furthermore, the ALJ does not specify

which particular statements by plaintiff about his symptoms and limitations are being disregarded or given less weight. On remand, the ALJ should provide clarification as to the evaluation of plaintiff's symptom testimony.

### Step Four and Five Findings

The ALJ's reconsideration of the evidence as discussed herein may implicate the ALJ's findings regarding plaintiff's functional capacity. On remand, the ALJ should reconsider the sequential analysis at steps four and five.

### Scope of Remand

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits. *Id.* at 1045. First, the Court must determine whether the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* (citing *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must determine "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Treichler*, 775 F.3d at 1101 (internal citations and quotation marks omitted). If the first two steps are satisfied, the Court must determine whether, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. "Even if [the Court] reach[es] the third step and credits [the improperly discredited evidence] as true, it is within the court's discretion either to make a direct award of benefits or to remand for further proceedings." *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101). Because evidentiary issues must be addressed by the ALJ as described herein, remand

ORDER
PAGE - 9

for further proceedings is appropriate.

## CONCLUSION

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this 7th day of February, 2020.

Mary Alice Theiler
United States Magistrate Judge